# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ADOLFO H. CASTANEDA,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-09-1038-CH |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF THE SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Mr. Adolfo Castaneda Hernandez brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of the Social Security Administration denying Mr. Hernandez's application for disability insurance benefits. Pursuant to 28 U.S.C. § 636(c), the parties have consented to the exercise of jurisdiction over this matter by a United States Magistrate Judge. The Commissioner has answered and filed the administrative record ("AR"), and both parties have briefed their respective positions. Based on the Court's review of the record and issues presented, the Court reverses the Commissioner's decision and remands this case for further administrative proceedings consistent with this Memorandum Opinion and Order.

---

[1] Plaintiff was identified as "Adolfo H Castaneda" on both the Civil Cover Sheet and the Complaint. The administrative record identifies the Plaintiff as "Adolfo Castaneda Hernandez." The Plaintiff's Briefs refer to him as "Adolfo Castaneda Hernandez" and "Mr. Henandez." Accordingly, the Plaintiff will be referred to herein as "Mr. Hernandez."

**I.      Procedural Background**

In his application for disability insurance benefits, Mr. Hernandez alleged a disability onset date of November 1, 2006. The agency denied the application initially and upon reconsideration. Mr. Hernandez requested and was granted an administrative hearing. An administrative law judge (ALJ) issued an unfavorable decision, and the Appeals Council denied Mr. Hernandez's request for review, making the decision of the ALJ the final decision of the Commissioner.

**II.     The Administrative Decision**

The ALJ followed the sequential evaluation process required by agency regulations. *See Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. The ALJ first determined that Mr. Hernandez had not engaged in substantial gainful activity at any time relevant to the decision. At step two, the ALJ determined that Mr. Hernandez's severe impairments include lumbar disc or degenerative disc disease at L2/L3 with disc protrusion and associated pain, hypertension, obesity, and possible mild microvascular disease. At step three, the ALJ determined that Mr. Hernandez's impairments do not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ next considered Mr. Hernandez's residual functional capacity (RFC). The ALJ determined that Mr. Hernandez has the exertional capacity for light work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). He can sit for two hours a day and can stand/walk for up to six

> hours a day and can perform occasional postural activities. He needs to alternate between sitting and standing either freely or at thirty minute intervals and cannot have repetitive bending or twisting at the waist, stooping, kneeling, crawling, or climbing of ladders.

AR 19. Based on this RFC and the testimony of a vocational expert (VE), the ALJ determined that Mr. Hernandez could not return to his past relevant work as sheet metal grinder or as meat boner. At step five, however, the ALJ found that Mr. Hernandez could perform other jobs that exist in significant numbers in the national economy such as small products assembler, machine operator, and inspector of productions. Based on these findings, the ALJ determined that Mr. Hernandez is not disabled within the meaning of the Social Security Act.

### III.  Issues Presented for Judicial Review

Mr. Hernandez contends that the ALJ committed legal error in failing to properly weigh and evaluate the opinions of Mr. Hernandez's medical providers; in failing to consider the effects of Mr. Hernandez's obesity; in failing to include all of Mr. Hernandez's limitations in the hypothetical questions to the VE, and in failing to properly evaluate Mr. Hernandez's credibility.

### IV.  Standard of Review

Because the Appeals Council denied review of the ALJ's decision, the Commissioner's final decision for purposes of this appeal is that of the ALJ. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial

evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d at 760 (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *See Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

**V.     Analysis**

    **A.     Evaluation of Opinions of Treating Sources**

Mr. Hernandez challenges the ALJ's evaluation of and lack of weight assigned to the diagnoses and opinions of Mr. Hernandez's treating physician, Dr. Hassan Farooq.

The ALJ identified Dr. Farooq as a "consultant," and summarized the results of a consultative examination performed by Dr. Farooq in July, 2007. The ALJ noted Dr. Farooq's observation that Mr. Hernandez walked without a "waddling gait," did not use a cane, had no difficulty with tandem walking and arising from a squatting position, and had

no pain performing straight leg raises. Although the ALJ briefly summarized Dr. Farooq's other progress notes, she apparently considered Dr. Farooq to be a consultant rather than a treating source, despite the fact that Dr. Farooq had treated Mr. Hernandez both before and after the consultative examination.[2]

The ALJ did not discuss Dr. Farooq's answers to a Multiple Impairment Questionnaire dated February 13, 2008. Dr. Farooq had examined Mr. Hernandez on that date. In answering the questionnaire, Dr. Farooq stated that Mr. Hernandez could sit for about three hours in an eight-hour workday but could stand and/or walk for only one hour in an eight-hour workday. Dr. Farooq's prognosis for Mr. Hernandez's ability to do manual labor was poor. Dr. Farooq further stated that Mr. Hernandez could occasionally lift only five to ten pounds and could frequently lift only five pounds. Dr. Farooq stated that his opinion was supported by the results of X-rays and an MRI. AR 304-311.

Dr. Farooq's opinion is supported by the notes of Dr. Sandy Bidner who examined Mr. Hernandez on July 23, 2008. Dr. Bidner stated that X-rays of the lower spine demonstrate disc space narrowing at the L2-L3 region. She diagnosed Mr. Hernandez with lumbar disc disease with disc protrusion. She stated that Mr. Hernandez "appears to be significantly disabled with low back pain, as a result of this disc protrusion." AR 412.

---

[2]In fact, the Commissioner argues in his brief that Dr. Farooq is not a treating physician. *See* Brief in Support of Commissioner's Decision at 3-5. The administrative record, however, reflects a treatment history from November 2006 through at least February 2008. AR 304, 267, 232, 269, 313.

Under the rules governing evaluation of opinion evidence, greater weight is generally given to the opinions of sources of information who have treated the claimant than of those who have not. *See* 20 C.F.R. § 416.927(d)(2); *see also Hackettv. Barnhart*, 395 F.3d 1168, 1173-1174 (10th Cir. 2005) (*citing Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). First, the ALJ must determine whether the opinion of a treating source should be given controlling weight. *Id.* at 1174. Using a sequential analysis, an ALJ is required to give the opinion of a treating source controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques;" and (2) "consistent with other substantial evidence in the record." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quotation omitted). If an opinion fails to satisfy either of these conditions, it "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Id.* (*quoting* SSR 96-2p, 1996 WL 374188, at *4). Non-controlling opinions "'are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927.'" *Id.* Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the treating source is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See id.* at 1301 (quotation omitted). If the

ALJ chooses to reject a treating source's opinion entirely, the ALJ must set forth specific legitimate reasons for doing so. *See Langley v. Barnhart*, 373 F.3d at 1119.

In this case, the ALJ erred in failing to identify Dr. Farooq as a treating physician. Because of her incorrect assumption that Dr. Farooq was merely a consultative physician, she failed to follow the steps necessary to determine whether Dr. Farooq's opinion should be given controlling weight. Thereafter, the ALJ also failed to state what weight, or lack of weight, she was assigning to Dr. Farooq's opinions and why. This error requires reversal and remand.

### B. <u>Evaluation of Obesity</u>

At step two of the sequential evaluation, the ALJ identified obesity as one of Mr. Hernandez's severe impairments, along with lumbar disc disease or degenerative disc disease, disc protrusion with associated pain and hypertension. Mr. Hernandez contends that the ALJ erred in failing to consider the effects of his obesity combined with his other impairments.

Social Security Ruling (SSR) 02-1p requires an ALJ to consider the effects of obesity when assessing RFC because "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." Titles II & XVI: Evaluation of Obesity, SSR 02-1p, 2000 WL 628049, at *1 (Sept. 12, 2002). This evaluation is particularly important when a claimant has both musculoskeletal impairments and obesity. At each step of the sequential evaluation, whether determining that a claimant with obesity does or does not have a listing-level impairment or combination of impairments,

assessing a claimant's RFC, or determining what jobs, if any, a claimant could perform, an ALJ must consider the cumulative effects of obesity and the claimant's other impairments.

There is no specific body weight that, standing alone, makes obesity a "severe" impairment. Nevertheless, as the ruling states, a claimant's weight and body mass index (BMI), combined with musculoskeletal impairments, can make an otherwise mild or moderate condition severe. On July 2, 2007, Mr. Hernandez's weight was 232. His BMI was calculated at 38.7 – just under 40, the BMI considered to mark Level III, or "extreme" obesity. *Id.* at 2.

The ALJ's determination that Mr. Hernandez's obesity is "severe" is supported by substantial evidence in the record. The ALJ did not, however, discuss the effects of obesity when combined with Mr. Hernandez's other impairments. In her decision, the ALJ made only one more reference to Mr. Hernandez's obesity stating that "even with his obesity and back pain," Mr. Hernandez could perform light work with some postural restrictions. AR 21. The Commissioner contends that this statement is sufficient to support a conclusion that the ALJ considered the effects of Mr. Hernandez's obesity in combination with his other impairments. Although this statement does suggest that the ALJ recognized Mr. Hernandez's obesity as a possible contributing factor to his back pain, the conclusory nature of the statement makes meaningful review impossible. On remand, the Commissioner should reconsider and discuss the effects of all of Mr. Hernandez's impairments combined with his obesity, and then determine his resulting functional limitations.

## C. The ALJ's Hypothetical Question to the VE

Mr. Hernandez contends that the ALJ's hypothetical question to the VE did not include all of his limitations. This issue is based on the VE's answer to a hypothetical question posed by Mr. Hernandez's attorney. Asked what jobs would be available to an individual with the restrictions reflected in Dr. Farooq's opinion, the VE testified that there would be no jobs available to such an individual.

Hypothetical questions posed to a VE to assist with the step-five determination must reflect with precision all – and only – the impairments and limitations borne out by the evidentiary record. *See Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996). An ALJ's hypothetical question to a VE need not include impairments which the ALJ determines to be unsupported by the record, even if those impairments had been included in the opinion of a treating physician. As discussed above, the ALJ erred in failing to analyze Dr. Farooq's opinion as that of a treating physician. As for hypothetical question to a VE, however, it is not automatically error for an ALJ to omit limitations included in the opinion of a treating physician if, indeed, those limitations are not supported by other evidence in the record. Standing alone, this issue would not have required reversal and remand.

## D. The ALJ's Credibility Determination

The Tenth Circuit Court of Appeals recently restated the salient points a court must consider when reviewing credibility determinations:

> "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and

affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston [v. Bowen]*, 838 F.2d 1125, 1133 [(10th Cir. 1988)] (footnote omitted); *see also Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (ALJ "must articulate specific reasons for questioning the claimant's credibility" where subjective pain testimony is critical); *Williams [ex rel.] Williams v. Bowen*, 859 F.2d 255, 261 (2d Cir.1988) ("failure to make credibility findings regarding . . . critical testimony fatally undermines the [Commissioner's] argument that there is substantial evidence adequate to support [her] conclusion that claimant is not under a disability").

*Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (*quoting Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). The Court also restated the two-step process an ALJ should use in evaluating a claimant's subjective allegations of pain:

> The framework for the proper analysis of Claimant's evidence of pain is set out in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

*Id.* at 1144-1145 (internal quotations and citations omitted). In determining whether a claimant's subjective complaints are credible, the ALJ should consider such evidence as:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.* at 1145 (internal quotation and citations omitted).

In this case, the objective evidence establishes that Mr. Hernandez has a pain-producing impairment substantiated by X-rays and MRI results. Additionally, there is at least a "loose nexus" between the proven impairment and his subjective allegations of pain.

The ALJ determined that Mr. Hernandez's credibility regarding the intensity of his pain was undermined by his daily activities and the fact that at the time of the hearing, he was taking only ibuprofen for pain. These are two factors an ALJ should consider when deciding if a claimant's allegations of pain are credible. In this case, however, marginal daily activities and reliance on ibuprofen for pain are insufficient to support the ALJ's credibility findings.

First, the record indicates that Mr. Hernandez's daily activities, even as described by the ALJ, are minimal:

> He said that on a typical day, he wakes up at 2:00 A.M., however, due to pain he reportedly remains lying down until 6:00 A.M., when he gets up and watches television, prepares his meal and also cooks for his father-in-law and son.[3] He said he cleans the house, sometimes, and his wife does the yard work. He stated he also does the laundry and goes to the store grocery shopping. He claimed he can read and write in Spanish, but not in English. Thus it would appear that the claimant has no difficulty conducting ordinary activities of daily living.

AR 21. An ALJ may not "rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain." *Hamlin v. Barnhart*, 365 F.3d 1208, 1221 (10th Cir. 2004) (internal quotation and citation omitted).

Second, though it is true that at the time of the hearing, Mr. Hernandez was taking only ibuprofen for pain, the ALJ never inquired as to why Mr. Hernandez relied on ibuprofen for pain instead of taking any of the stronger medications he had previously taken. The ALJ's credibility determination is not supported by substantial evidence. On remand,

---

[3] Mr. Hernandez actually testified that he prepared his own breakfast. He did not testify that he "cooks for his father-in-law and son."

the ALJ should carefully consider and discuss factors relevant to determining Mr. Hernandez's credibility.

The decision of the Commissioner is reversed and the cause is remanded for further proceedings consistent with the Memorandum Opinion and Order.

ENTERED this  29th  day of June, 2010.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE